IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ACCELERATION BAY LLC,

Plaintiff,

v.

ELECTRONIC ARTS INC.,

Defendant.

Civil Action No. 1:16-cv-00454-RGA

**MEMORANDUM OPINION**

Philip A. Rovner, POTTER ANDERSON & CORROON, LLP, Wilmington, DE; Aaron M. Frankel (argued) and Marcus Colucci (argued), KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, NY.

Attorneys for Plaintiff.

Jack B. Blumenfeld, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; David P. Enzminger (argued) and Louis L. Campbell, WINSTON & STRAWN LLP, Menlo Park, CA; Michael A. Tomasulo (argued), WINSTON & STRAWN LLP, Los Angeles, CA.

Attorneys for Defendant.

March 27, 2019

ANDREWS, U.S. DISTRICT JUDGE:

Presently before me are Defendant's Motion for Summary Judgment (D.I. 424) and Plaintiff's Motion for Partial Summary Judgment (D.I. 435). The Parties have briefed the issues. (D.I. 426, 437, 465, 467, 476, 478). I heard argument on February 28, 2019. (D.I. 525 ("Tr.")). I ordered supplemental briefing on the issues addressed during the argument. (D.I. 526, 534, 535). For the reasons set out more fully below, I will partially grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

## I. BACKGROUND

Plaintiff brought this suit against Electronic Arts Inc. ("EA") on June 17, 2016, alleging that certain multiplayer features of the FIFA, NHL, PGA Tour,[1] and Plants v. Zombies: Garden Warfare ("PvZ") games infringe U.S. Patent Nos. 6,701,344 ("'344 Patent"), 6,714,966 ("'966 Patent"), 6,732,147 ("'147 Patent"), 6,829,634 ("'634 Patent"), 6,910,069 ("'069 Patent"), and 6,920,497 ("'497 Patent"). (D.I. 1). On the same date, Plaintiff filed suit against several other entities, including Activision Blizzard Inc. ("Activision"). (C.A. 16-453 (the "Activision Case")).

On August 8, 2018, after the Parties completed their initial briefing on the pending motions, I granted summary judgment of invalidity of the asserted claims of the '634 Patent and claims 11, 15, and 16 of the '147 Patent. (D.I. 499 at 7-9, 20-23, 500). I also granted Activision summary judgment of noninfringement of the '344, '966, and '497 Patents as to certain accused games in that case. (*Id.* at 10-20).

---

[1] The current briefing makes no mention of the PGA Tour games.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely

disputed material fact relative to the claims in question.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the nonmoving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The burden on the

moving party may be discharged by pointing out to the district court that there is an absence of

evidence supporting the non-moving party's case.  *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue

for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986);

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).  A non-moving

party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

other materials; or (B) showing that the materials cited [by the opposing party] do not establish

the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view

the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor.  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*,

476 F.3d 180, 184 (3d Cir. 2007).  A dispute is "genuine" only if the evidence is such that a

3

reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. Infringement

A patent is infringed when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent . . . ." 35 U.S.C. § 271(a). A two-step analysis is employed in making an infringement determination. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). First, the court must construe the asserted claims to ascertain their meaning and scope. *See id.* The trier of fact must then compare the properly construed claims with the accused infringing product. *See id.* at 976. This second step is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

"Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1477 (Fed. Cir. 1998). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). However, "[o]ne may infringe an independent claim and not infringe a claim dependent on that claim." *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (internal quotations omitted). A product that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the differences between an individual limitation of the claimed invention and an element of the accused product are insubstantial. *See Warner–*

4

*Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997). The patent owner has the burden of proving infringement and must meet its burden by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if at least one limitation of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims (as construed by the court). *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## III.   DISCUSSION

The Parties raised numerous issues in their summary judgment briefing. Most were not adequately briefed, and I do not consider them any further. I asked the Parties to specifically address certain issues during oral argument and in 75 pages of additional briefing. (D.I. 524). I will address those issues in detail and deny summary judgment on the rest.

### A.   *Infringement of the Asserted Claims of the '344, '966, and '497 Patents*

The Parties agree that, under my reasoning in the Activision Case, Defendant does not make or sell the inventions claimed in the '344, '966, and '497 Patents. Plaintiff also agrees that my opinion in the Activision Case limits its use argument to Defendant's alleged use by testing

the Accused Products.  Plaintiff does not reargue most of those points in this case.  (D.I. 511 at 2;

Tr. at 21:1-5).  Accordingly, I will grant Defendant's motion for summary judgment on the

conceded issues.  Plaintiff does argue, however, that its use by testing position is distinct from its

argument in the Activision Case.  It also requests that I reconsider my position on "making."  I

will consider each of its arguments in turn.

### 1.  Use

It is undisputed that Defendant tests the Accused Products.  The problem for Plaintiff,

however, is establishing that Defendant tests the Accused Products in an infringing manner.  To

establish infringement, Plaintiff must prove by a preponderance of the evidence that Defendant

tested the accused product, in an accused mode, on an accused platform, during the damages

period, and within the United States.  Defendant argues that Plaintiff's evidence as to each

accused game is insufficient to meet this burden.

#### i. FIFA

In support of its argument that Defendant tests the accused FIFA games in a potentially

infringing manner, Plaintiff identifies FIFA testing protocols, EA organizational charts that

identify teams responsible for testing, and tracking spreadsheets that show the methodical way

EA tests every mode of every game.  (D.I. 534 at 2-8).  It also notes that the net impact of the

documents could reasonably support a conclusion that Plaintiff tested the games during the

damages period.  (*Id.* at 8-9).  Defendant argues that Plaintiff's cited evidence does not establish

infringement as it does not show testing with five or more players on an accused platform or

testing on an Xbox that is connected to the Blaze server.  (D.I. 535 at 9).  I do not find

Defendant's argument persuasive.  Plaintiff does not have the burden of conclusively

establishing, with 100 percent certainty, that Defendant tested with the correct number of players

on the correct platform.  Rather, Plaintiff must prove such testing by a preponderance of the

evidence. And, at this stage, it must only show that a reasonable jury could conclude such testing occurred. The many documents describing EA's testing practices provide ample circumstantial evidence on which a jury might reasonably rely to conclude Defendant tested FIFA with five or more players and on an Xbox.

Plaintiff's evidence of FIFA testing in the United States is, however, lacking. Plaintiff has two theories of domestic testing activity.[2] First, Plaintiff notes, "EA admitted during discovery that it tests the Blaze/Dirty SDK software in the United States (as well as in India and Canada)." (D.I. 534 at 9). The Blaze/Dirty SDK provides the accused infringing network functionality and, Plaintiff argues, the Blaze/Dirty SDK software is integrated into the FIFA games. (*Id.*). Second, Plaintiff points out, "EA works with early pre-release testers in the United States to obtain feedback regarding the Accused Products, such as FIFA, as reflected in surveys." (*Id.* at 10). Defendant responds, "Testing of Blaze/Dirty software does not show the *accused games* were ever tested in the United States, in an accused mode, on an accused platform." (D.I. 535 at 10). It also notes that the evidence of domestic "pre-release testers" cited by Plaintiff is marketing analysis of consumer feedback. (*Id.*).

I agree with Defendant. Plaintiff does not cite evidence which would allow a reasonable jury to connect testing of the Blaze/Dirty SDK software to testing of the FIFA games. Evidence of consumer feedback is similarly unhelpful as it does not indicate that *Defendant* engaged in any potentially infringing activity. On balance, although a jury may reasonably conclude that Defendant tested the games in an otherwise infringing manner, Plaintiff identifies no evidence

---

[2] Plaintiff also says, "EA uses at least two data centers in the United States that house its game servers." (D.I. 534 at 10). As Defendant correctly notes, "Acceleration does not explain how 'data centers' have any relevance to the asserted claims at all, much less whether the data centers relate to its testing allegations." (D.I. 535 at 9 n.3).

which would allow a jury to conclude that Plaintiff tested the FIFA games in the United States. Thus, as a matter of law, Plaintiff cannot establish infringement via use of the FIFA games. I will grant summary judgment of no infringement of the '344, '966, and '497 Patents via use of the FIFA games.

### ii. NHL and PvZ

The Parties' arguments regarding use via testing of the NHL and PvZ games largely mirror those made regarding the FIFA games. The arguments for and evidence of testing an accused product, in an accused mode, on an accused platform and during the damages period are identical. I again find that the many documents describing EA's testing practices provide ample circumstantial evidence on which a jury might reasonably rely to conclude Defendant tested these accused games, in an infringing manner, with five or more players, and on an Xbox.

In addition to the evidence Plaintiff identified for the FIFA games, Plaintiff points to an interrogatory response pertaining to NHL and PvZ, which states that "multiplayer" testing occurs in the United States and Canada. (D.I. 534 at 9; *see also* D.I. 533-1, Exh. 40 at Resp. to Interrog. No. 6). Defendant argues that this interrogatory response is not sufficient, standing alone, to establish infringement. (D.I. 535 at 9). It also argues that not all multiplayer modes are accused. (*Id.*). I agree. I do not agree, however, that Plaintiff's evidence is insufficient when combined with the rest of the relevant evidence. A reasonable jury, when presented with all of the cited evidence and Defendant's binding admission that it tests multiplayer modes in the United States, could reasonably conclude that Defendant tested the NHL and PvZ games in an infringing manner in the United States. I will deny Defendant's motion for summary judgment of no use by testing of the NHL and PvZ games.

### 2. Making

#### i. System of the '344 and '966 Patents

Plaintiff's argument that Defendant makes the system of the '344 and '966 Patents is indistinguishable from the argument it made in the Activision Case. (*Compare* D.I. 534 at 13-15, *with* C.A. 16-453, D.I. 475 at 2-5). There I found Activision did not make the claimed system because "action by multiple customers is required here for the claimed 'participants' to be in place and to send data in the network." (D.I. 499 at 13). On that basis, I concluded that *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011), was indistinguishable. Plaintiff does not address my previous ruling on this issue and does not explain how my previous analysis was erroneous. (*See* D.I. 534 at 13-15). I do not independently see a reason to depart from my earlier determination. Accordingly, I will grant Defendant's motion for summary judgment of no infringement of the systems of the '344 and '966 Patents by making.

#### ii. Component of the '497 Patent

The asserted claims of the '497 Patent recite, "A component in a computer system for locating a call-in port of a portal computer, comprising" four means-plus function elements, including "means for selecting the call-in port of the identified portal computer using a port ordering algorithm." ('497 Patent, claim 9). In the Activision Case, Plaintiff alleged that the "component" was the game console. I found that Activision did not make the component as it did not make the game console. (D.I. 499 at 19-20). In this case, Plaintiff argues that the accused "component" is the Blaze Redirector.[3] (D.I. 534 at 10-13).

_____

[3] On a user's request, the Blaze Redirector connects the game console to one of the Blaze Servers. (D.I. 426 at 8).

9

Defendant argues that Plaintiff has failed to provide any evidence that the Blaze Redirector meets the "means for selecting the call-in port of the identified portal computer using a port ordering algorithm" limitation. (D.I. 535 at 10). It notes that Dr. Mitzenmacher only identifies Microsoft's Xbox consoles as the structure for this limitation. (*Id.* at 11; *see* D.I. 428-1, Exh. A-2 at ¶¶ 120, 123, 126; D.I. 429-1, Exh. A-4 at ¶ 80). Moreover, it argues, Plaintiff's only evidence of a "port ordering algorithm" are Microsoft documents that are unconnected to Defendant. (D.I. 535 at 11). Finally, it argues that Plaintiff has conceded that the Microsoft algorithm itself does not meet the "port ordering algorithm" limitation by failing to respond to that argument in the original briefing. (*Id.* at 11-12). Plaintiff responds by citing, without explanation, large swaths of its expert's reports. (D.I. 534 at 11-12). It does not specifically discuss the "means for selecting the call-in port of the identified portal computer using a port ordering algorithm" limitation, much less support its contention that Dr. Mitzenmacher disclosed the Blaze Redirector as the accused component.

Citation to reams of expert testimony, without explanation, does not carry Plaintiff's burden of establishing a *prima facie* case of patent infringement. *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371-72 (Fed. Cir. 2002); *Johnson v. Gov't Employees Ins. Co.*, 2014 WL 4648171, at *1 (D. Del. Sept. 12, 2014). As Defendant says, the cited portions of Dr. Mitzenmacher's reports only mention the Xbox and only cite to what appear to be Microsoft documents. There is nothing in the cited portions of the report that might support a finding that the Blaze Redirector is the "means for selecting the call-in port of the identified portal computer using a port ordering algorithm." I recognize that several of Plaintiff's cited paragraphs consist entirely of unexplained citation to code. That is insufficient to create a factual question. Plaintiff does not attempt to explain why the code is relevant or might augment Dr. Mitzenmacher's

10

analysis that refers only to the Xbox- and Microsoft-provided functionality. Accordingly, I will grant Defendant's motion for summary judgment that it does not infringe by making the component of the '497 Patent.

### B. Infringement of the Asserted Method Claims of the '069 and '147 Patents

Defendant argues that it cannot infringe the method claims of the '069 and '147 Patents because some of the steps, as Plaintiff alleges they happen, occur outside of the United States. (D.I. 526 at 10-14). To infringe a method claim, every step, or stage, must be performed in the United States. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005). Specifically, Defendant argues that the Blaze Server, which is located in Ireland, is accused of performing at least one step in each of the claims. (D.I. 535 at 12).

#### 1. '069 Patent

Plaintiff argues that claim 1 of the '069 Patent has just three active steps, each of which is performed in the United States. (D.I. 534 at 17-18). Defendant argues that sending an "edge connection request" is an additional step and that, for the claim to be infringed, it must also be performed in the United States. (D.I. 526 at 10-12). Claim 1 recites:

> A computer-based, non-routing table based, non-switch based method for adding a participant to a network of participants, each participant being connected to three or more other participants, the method comprising:
>
> > **identifying a pair of participants** of the network that are connected wherein a seeking participant contacts *a fully connected portal computer*, which in turn *sends an edge connection request* to a number of randomly selected neighboring participants to which the seeking participant is to connect;
> >
> > **disconnecting the participants** of the identified pair from each other; and
> >
> > **connecting each participant** of the identified pair of participants to the seeking participant.

('069 Patent, claim 1 (Parties' agreed steps bolded; Defendant's proposed additional step italicized)).

Plaintiff's distinction between steps and parts of steps is unsupportable. The Federal Circuit is clear that a "patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized." *NTP*, 418 F.3d at 1317. The "fully connected portal computer . . . send[ing] an edge connection request to a number of randomly selected neighboring participants to which the seeking participant is to connect" is a stage of the claim. Accordingly, the claim is not infringed unless this stage is completed and completed in the United States. No one disputes that the Blaze Server sends the edge connection request or that the request is sent from Ireland. Thus, this stage of the claim is completed outside the United States. I will grant Defendant's motion for summary judgment of no infringement of the asserted method claims of the '069 Patent on this basis.

### 2.  '147 Patent

The Parties dispute whether Plaintiff can establish infringement of claim 1 of the '147 Patent. The method claim reads:

> A method of disconnecting a first computer from a second computer, the first computer and the second computer being connected to a broadcast channel, said broadcast channel forming an m-regular graph where m is at least 3, the method comprising:
>
>> when the first computer decides to disconnect from the second computer, the first computer sends a disconnect message to the second computer, said disconnect message including a list of neighbors of the first computer; and
>>
>> when the second computer receives the disconnect message from the first computer, the second computer broadcasts a connection port search message on the broadcast channel to find a third computer to which it can connect in order to maintain an m-regular graph, said third computer being one of the neighbors on said list of neighbors.

('147 Patent, claim 1).

Plaintiff cannot establish literal infringement.  A review of the expert report gives no indication that Plaintiff, in fact, intends to argue that the Accused Products literally infringe. (D.I. 442-1, Exh. 1 at ¶¶ 483-515 (discussing the "disconnect message" limitation and opining only that "[t]he Accused Products meet this claim element under the doctrine of equivalents"). Plaintiff's briefing on this subject is less clear.  (D.I. 467 at 20-21; D.I. 534 at 16 (arguing, without support, that the Accused Products send a literal disconnect message which includes a list of neighbors)).  It is undisputed, however, that the only accused list is sent, not by a "first computer" as part of a disconnect message, but by the Blaze Server at the start of the game. (D.I. 467 at 21).  This does not literally meet the "first computer sends a disconnect message to the second computer, said disconnect message including a list of neighbors" limitation.  Thus, to the extent Plaintiff alleges literal infringement, I will grant Defendant's motion for summary judgment.

Defendant argues that Plaintiff cannot prove infringement of the claim under the doctrine of equivalents because the only message Plaintiff identifies as a "list of neighbors" is sent by the Blaze Server (in Ireland) at the beginning of a game.  (D.I. 526 at 13-14).  Plaintiff responds that the relevant activity, the sending of the disconnect message from the first computer to the second computer, is completed in the United States.  (D.I. 534 at 17).  It argues that the disconnect message is equivalent to the claimed disconnect message because it triggers an already-known list of participants that the Blaze Server provided at the start of the game.  (D.I. 467 at 21).  The fact that the list originated in Ireland is of no moment because the dissemination of the list was pre-method activity.  (D.I. 534 at 17).  I agree with Plaintiff's analysis.  Under its doctrine of equivalents theory, no step of the claim occurs extraterritorially.  Thus, I will not grant Defendant summary judgment on this issue.

13

Defendant also argues that, if it is Plaintiff's position that the Blaze Server does not complete any of the steps of the method, Defendant cannot be considered a direct infringer. (D.I. 526 at 14). "The only EA activity involved in Acceleration's theory is exclusively the operation of the Blaze Server." (*Id.*). Plaintiff appears to concede that Defendant does not itself complete allegedly infringing activity. (*See* D.I. 534 at 15-17; *see also* D.I. 465 at 4-6; D.I. 478 at 5-7). Defendant cites a pre-*Akamai* case in support of its position that a defendant must perform at least one step of the allegedly infringing method to be held liable as a direct infringer, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014). The law post-*Akamai* is, however, "that liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc). Thus, Defendant may be a direct infringer despite not actually performing any step of the method. I will deny summary judgment of no direct infringement of the method claims of the '147 Patent.

*C. Infringement of the Topology Limitations of the '344, '966, '069, and '147 Patents*

The claims of the '344, '966, '069, and '147 Patents each require that the claimed network be configured in a certain way—with a particular "topology." The Parties continue to disagree, however, about the most basic factual underpinnings of the accused network. (D.I. 526 at 15-29; D.I. 534 at 18-26; D.I. 535 at 1-8). Specifically, they do not agree on the appropriate "layer" of the network at which to evaluate infringement. (*See* D.I. 534 at 19 ("[Defendant] manufactures a purported non-infringement theory by ignoring the application layer and focusing on the data link and network layers, as it has done since the beginning of the case."); D.I. 535 at 1 ("After nearly four years of litigating this case, [Plaintiff] still cannot coherently describe any accused network, let alone provide a diagram the Court asked for at the hearing. Using the term

14

'application overlay network' as a mantra does not answer those questions.")). This foundational

factual question, in addition to the hundreds of cited pages of expert reports and deposition

testimony, precludes summary judgment on the issue of infringement of the topology limitations

of the '344, '966, '069, and '147 Patents. I will deny Defendant's motion for summary judgment

on this issue.

### D. Other Summary Judgment Issues

Defendant moves for summary judgment that the Accused Products do not infringe the

Asserted Patents on several additional grounds. (D.I. 426 at 11-32). Plaintiff separately moves

for summary judgment that the Accused Products infringe claims 9 and 16 of the '497 Patent and

that Defendant is a direct infringer. (D.I. 437). Both Parties raise so many issues that many of

them are only cursorily briefed.[4] The Parties may have made some other valid arguments buried

in the briefing, but I do not see them. Thus, I will deny Plaintiff's Motion for Partial Summary

Judgment (D.I. 435) as to all summary judgment issues and I will deny Defendant's Motion for

Summary Judgment (D.I. 424) as to all issues other than those discussed previously.

### IV.   CONCLUSION

I will grant Defendant summary judgment of no infringement of the asserted claims of

the '344, '966, and '497 Patents based on the FIFA games. I will grant Defendant summary

judgment of no infringement of the asserted claims of the '344, '966, and '497 Patents by

making, selling or use, other than testing, of the NHL and PvZ games. I will grant Defendant

summary judgment of no infringement of the asserted method claims of the '069 Patent. To the

extent Plaintiff alleges literal infringement of the '147 Patent, I will grant Defendant's motion for

---

[4] EA made at least fifteen summary judgment arguments in its twenty-one pages of summary judgment briefing. (D.I. 426).

15

summary judgment.  As to all other issues, I will deny the Parties' motions.  A separate order will be entered.